```
                                                    USDC SDNY
                                                    DOCUMENT
UNITED STATES DISTRICT COURT                        ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK                       DOC #: _____
```

PATRICK PLUMMER, on behalf of himself
individually and all others similarly situated,

DATE FILED: 12/8/2014

Plaintiff,

-against-

13 Civ. 7562 (AT)

ATLANTIC CREDIT & FINANCE, INC.,
CAPITAL MANAGEMENT SERVICES, LP,
and VELOCITY INVESTMENTS, LLC,

**OPINION
AND ORDER**

Defendants.

ANALISA TORRES, District Judge:

In this proposed class action, Plaintiff, Patrick Plummer, alleges that Defendants, Atlantic Credit & Finance, Inc. ("Atlantic Credit"), Capital Management Services, LP ("Capital Management"), and Velocity Investments, LLC ("Velocity") violated provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq*. Velocity moves to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that it is not a "debt collector" under the FDCPA. For the reasons stated below, the motion is DENIED.

## BACKGROUND

The following facts are taken from the amended class action complaint (the "complaint") and are accepted as true for the purposes of this motion. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

Plaintiff incurred credit card debt to Union Plus Credit Card/HSBC. Am. Compl. ¶¶ 5, 35. Plaintiff made his last payment on the account no later than September 2006, after which HSBC alleged that Plaintiff's debt fell into default. *Id.* ¶¶ 36-37. Atlantic Credit subsequently purchased Plaintiff's credit card debt from HSBC. *Id.* ¶ 38. Atlantic Credit placed the debt with

various debt collectors for the purpose of collecting from Plaintiff. *Id.* ¶ 39. Beginning no later than 2007, several debt collectors, on behalf of Atlantic Credit, sent collection letters to Plaintiff. *Id.* ¶¶ 40-42. Plaintiff's attorney responded to each debt collector, informing them that Plaintiff was disputing the debt and that Plaintiff was represented by counsel and should not be contacted directly. *Id.* ¶¶ 43-46.

By letter dated February 7, 2011, Plaintiff's attorney sent a dispute and representation letter to Atlantic Credit. *Id.* ¶¶ 58-59. Atlantic Credit responded to counsel on February 15, 2011, acknowledging receipt of Plaintiff's attorney's letter and providing "purported verification" of the debt. *Id.* ¶¶ 60-61. Atlantic Credit's letter indicated that Plaintiff's last payment to HSBC was on September 21, 2006. *Id.* ¶ 61.

Atlantic Credit subsequently sold the debt to Velocity, *id.* ¶¶ 66-67, a New Jersey limited liability company, with a principal business described as "the purchase of defaulted consumer debts originally owed or due or alleged to be originally owed or due to others." *Id.* ¶¶ 23, 28. Velocity "regularly collects or attempts to collect such debts either through itself or through others." *Id.* ¶ 26. Velocity placed Plaintiff's debt with Capital Management for the purpose of collection. *Id.* ¶ 65. Atlantic Credit had informed Velocity that Plaintiff disputed his debt and was represented by counsel. *Id.* ¶ 121. Plaintiff alleges that, upon placing the debt with Capital Management for collection, Velocity failed to provide this information to Capital Management. *Id.* ¶¶ 106, 122-25. Plaintiff alleges, in the alternative, that Velocity did inform Capital Management that Plaintiff disputed his debt and was represented by counsel. *Id.* ¶ 107.

On October 24, 2012, Capital Management sent a collection letter to Plaintiff, stating that Capital Management was collecting on behalf of Velocity. *Id.* ¶¶ 62-64. The letter demanded $744.82 as settlement for a debt balance of $3,724.12. *Id.* ¶¶ 68-69. The letter was sent more

than six years after the date of Plaintiff's last payment on the account, *id.* ¶¶ 61, 70, and failed to inform Plaintiff that the applicable six-year statute of limitations had expired and that any payment by Plaintiff would revive the statute of limitations, *id.* ¶¶ 71-74.

Plaintiff alleges that Capital Management, in sending letters to collect on his debt, was acting as an agent of Velocity and that Velocity "exercised control or had the right to exercise control over the collection activities of Capital Management." *Id.* ¶¶ 30-31. Plaintiff claims that Velocity used Capital Management in order to shield itself from liability under the FDCPA. *Id.* ¶ 32. Plaintiff alleges that Atlantic Credit, Capital Management, and Velocity are each debt collectors within the meaning of the FDCPA, 15 U.S.C. § 1692a(6). *Id.* ¶¶ 8, 16, 21.

## DISCUSSION

I. Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations in the complaint that, accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions[] and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. In addition, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* On such a motion, the court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). A district court considering a Rule 12(b)(6) motion must accept all factual allegations in the complaint as true, while also drawing all reasonable inferences in favor of the nonmoving party. *ATSI Commc'ns,*

*Inc.*, 493 F.3d at 98.

II. Claims Under the FDCPA

The FDCPA "establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection, and requires that such debt collectors advise the consumers whose debts they seek to collect of specified rights." *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001). "The purpose of the FDCPA is to "'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (quoting 15 U.S.C. § 1692(e)). To this end, the FDCPA "grants a private right of action to a consumer who receives a communication that violates the Act." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008). To establish a violation under the FDCPA,

> (1) the plaintiff must be a "consumer" who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a "debt collector," and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements.

*Healy v. Jzanus Ltd.*, 02 Civ. 1061, 2002 WL 31654571, at *2 (E.D.N.Y. Nov. 20, 2002) (citing 15 U.S.C. § 1692(a)).

A. Velocity is a Debt Collector under the FDCPA

The relevant provisions of the FDCPA apply only to the acts or omissions of "debt collectors" and not to those of "creditors." *Schuh v. Druckman & Sinel, LLP*, 751 F. Supp. 2d 542, 548 (S.D.N.Y. 2010) (citations omitted); *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003) ("For purposes of applying the [FDCPA] to a particular debt, these two

categories—debt collectors and creditors—are mutually exclusive."). A debt collector is defined in the statute as any person who (1) "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," or (2) "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6); *see also Schlegel v. Wells Fargo Bank, N.A.*, 720 F.3d 1204, 1208 (9th Cir. 2013). A creditor, by contrast, is a "person who offers or extends credit creating a debt," 15 U.S.C. § 1692a(4), and is not generally subject to the FDCPA. *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998).

Velocity contends that it is not a debt collector under the FDCPA and, therefore, that the claims against it must be dismissed. Velocity does not claim to be a creditor here. Rather, Velocity maintains that it is not a "direct" debt collector because it did not participate in any debt collection activity against Plaintiff, Def. Mem. 3-5; Def. Reply 2-4, and that it is not an "indirect" debt collector because Plaintiff has failed to allege the interdependence or control necessary to establish an agency relationship, Def. Mem. 5-6; Def. Reply 5-6. In addition, Velocity argues that the fact that it has acted as a debt collector in other instances does not make it a debt collector in this case. Def. Reply 6.

Plaintiff has sufficiently alleged that Velocity is a debt collector for purposes of this action. Plaintiff states in the complaint that the "principal purpose of [Velocity's] business is the purchase of defaulted consumer debts originally owed or due or alleged to be originally owed or due to others." Am. Compl. ¶ 23. More specifically, Plaintiff alleges that Velocity uses the mail in purchasing defaulted consumer debts, usually at a significant discount to their face value, and then seeks to collect on such debts. *Id.* ¶¶ 21-28. Plaintiff also states that Velocity purchased Plaintiff's defaulted debt from Atlantic Credit, placed it with Capital Management, and sought to

collect on it. *Id.* ¶¶ 38, 64-67. These allegations put Velocity squarely within the first definition of debt collector. *See Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 423 (S.D.N.Y. 2010); 15 U.S.C. § 1692a(6). Indeed, the FDCPA "recognizes that one who acquires debt merely for collection purposes is acting more like a debt collector than a creditor; thus, the [FDCPA] treats assignees of debt as debt collectors if the debt sought to be collected was in default when acquired by the assignee." *Suquilanda v. Cohen & Slamowitz, LLP*, 10 Civ. 5868, 2011 WL 4344044, at *10 (S.D.N.Y. Sept. 8, 2011) (citations and internal quotation marks omitted); *see also Pollice v. Nat'l Tax Funding, LP*, 225 F.3d 379, 404 (3d Cir. 2000) (finding that the defendant was a debt collector when its primary business was the collection of defaulted debts purchased from municipalities); *Schlosser*, 323 F.3d at 536 (collecting cases). This, in essence, is what Plaintiff alleges here.

Velocity's contention that *Suquilanda* is inapposite on the ground that Plaintiff has failed to allege corporate interdependence or control is unpersuasive. Contrary to Velocity's position (and ignoring for the moment that Plaintiff does allege the existence of an agency relationship), Plaintiff is not required to prove an agency relationship to establish that Velocity is a debt collector. In making this argument, Velocity appears to conflate the question of whether an entity is a debt collector under the FDCPA with the question of whether one debt collector can be found vicariously liable for the conduct of another acting on its behalf. The court in *Suquilanda* recognized that determining whether an entity is a debt collector requires a separate analysis before vicarious liability may be addressed. 2011 WL 4344044, at *4, *10-11; *see also Pollice*, 225 F.3d at 404-05 ("Thus, we conclude that NTF—which itself meets the definition of 'debt collector'—may be held vicariously liable for CARC's collection activity."). *Suquilanda*, which held that acquirers and assignees of defaulted debt satisfy the definition of debt collector,

supports the conclusion that Velocity is a debt collector here. 2011 WL 4344044, at *10.

Likewise, Velocity's contention that this case must be dismissed under *Schlegel* misses the mark. Velocity relies on *Schlegel* in arguing that a party cannot be a debt collector when it is collecting its own debts, but only where it is collecting debts "owed or due another." Def. Reply 3-4. However, this argument pertains only to the second definition of debt collector. *Schlegel*, 720 F.3d at 1209-10 ("[T]he second definition of debt collector . . . includes any person who 'regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.'") (citation omitted). If anything, the reasoning in *Schlegel*, as it relates to the alternate first definition, reinforces the conclusion that Velocity is a debt collector here. *See id.* at 1209. In dismissing the plaintiffs' FDCPA claims, the *Schlegel* court observed that the plaintiffs had not alleged that the principal purpose of Wells Fargo's business was debt collection but merely that debt collection made up some portion of Wells Fargo's business activity. *Id.* That is not the situation here, as Plaintiff clearly alleges Velocity's principal purpose is the collection of defaulted debts. Am. Compl. ¶¶ 21-28. In sum, Plaintiff has adequately pleaded that Velocity is a debt collector for purposes of this action.

B.  Plaintiff's Claims for Relief

Velocity, in arguing that it is not a debt collector under the statute, also contends that Velocity was not involved in any of the unlawful collection activities alleged. Contrary to Velocity's characterization of the complaint, Plaintiff has put forward factual allegations sufficient to establish that Velocity either directly or vicariously violated Sections 1692c(a)(2), 1692e(2)(A), 1692e(8), and 1692e(10) of the FDCPA.[1]  Plaintiff asserts three alternate theories

---

[1] Section 1692c(a)(2) prohibits a debt collector from communicating with a consumer "if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer."

of liability: First, Plaintiff alleges that, in placing the debt with Capital Management but failing to inform Capital Management as to the debt's legal status, Velocity directly violated the FDCPA by (1) making false representations in connection with the debt and (2) causing Capital Management to make unlawful communications to Plaintiff, namely those in the October 24, 2012 letter. *Id.* ¶¶ 119-26. Second, Plaintiff alleges that Velocity directly violated the FDCPA by making unlawful communications to Plaintiff in the October 24, 2012 letter that Capital Management sent to Plaintiff on Velocity's behalf. *Id.* ¶¶ 103-110. Third, Plaintiff alleges that in light of the principal-agent relationship between Velocity and Capital Management, Velocity may be held vicariously liable for FDCPA violations arising out of Capital Management's October 24, 2012 letter to Plaintiff. *Id.* ¶¶ 29-33, 89-101. The Court considers each of these theories in turn.

    1.    Failure to Inform Capital Management of the Legal Status of Plaintiff's Debt

Plaintiff has stated a plausible claim that Velocity made false representations in violation of Sections 1692e(2)(A), 1692e(8), and 1692e(10) in connection with its failure to inform Capital Management regarding the legal status of Plaintiff's debt. Velocity argues, first, that it can only be held liable for its actions—as opposed to its inaction—and, second, that it can only be held liable for direct communications to Plaintiff. Def. Reply 6. Both arguments fail. Although the FDCPA does not create an affirmative duty to communicate, it does mandate that, "if a debt collector *elects* to communicate 'credit information' about a consumer, it must not omit a piece of information that is always material, namely, that the consumer has disputed a particular debt." *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 418 (8th Cir. 2008); *see also DeSantis*,

---

Section 1692e(2)(A) prohibits "[t]he false representation of the . . . character, amount, or legal status of any debt." Section 1692e(8) prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." Section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

269 F.3d at 161 ("A debt collector violates the Act if it fails to convey the information required by the Act."). Indeed, Section 1692e(8) expressly prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." Accordingly, assuming Plaintiff can establish that Velocity engaged in communications covered by the FDCPA, Velocity may be held liable for its failure to disclose material information—namely that Plaintiff's debt was disputed and that Plaintiff was represented by counsel.[2]

The FDCPA contains a general prohibition against "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, as well as a broad definition of "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium," § 1692a(2). In light of the clear language of the statute, the complaint plausibly alleges that Velocity, in placing Plaintiff's debt with Capital Management, made communications concerning Plaintiff's debt that fall within the scope of the FDCPA. The Ninth Circuit has addressed precisely this situation:

> [A] consumer states a valid claim for relief under the [FDCPA] when he alleges that a debt collector has made false representations

---

[2] In general, courts analyze whether a debt collector's communications to a consumer are false or misleading under Section 1692e by asking whether the communications would be misleading to the "least sophisticated consumer." *Greco v. Trauner, Cohen & Thomas, LLP*, 412 F.3d 360, 363 (2d Cir. 2005). It is not readily apparent that the "least sophisticated consumer" test should apply where the challenged communications were made not to the consumer but to a third-party intermediary or debt collector. *Cf., e.g., Kropelnicki*, 290 F.3d at 127-28 (expressing doubts as to whether protections of the FDCPA, including the least-sophisticated-consumer standard, apply where communications were made to a consumer's attorney rather than directly to the consumer); *Evory v. RJM Acquisitions Funding LLC*, 505 F.3d 769, 774-75 (7th Cir. 2007) (holding that communication from a debt collector to a consumer's attorney is governed by the FDCPA but it is to be analyzed from the perspective of a "competent lawyer" rather than the "least sophisticated consumer"). The Court need not reach this question here, as the alleged omissions would be misleading irrespective of the recipient. The Court does, however, adhere to the generally accepted view that only material omissions or those expressly prohibited under the statute are actionable. As the Second Circuit recently observed (without explicitly deciding the issue), "several other circuit courts, as well as a number of district courts in this Circuit, read a materiality requirement into the FDCPA's prohibition of false, deceptive, or misleading practices in the collection of a debt." *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 94 (2d Cir. 2012) (summary order) (collecting cases); *see also Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009) (requiring materiality, noting that "[a] statement cannot mislead unless it is material, so a false but non-material statement is not actionable"); *Fritz v. Resurgent Capital Servs., LP*, 955 F. Supp. 2d 163, 170 (E.D.N.Y. 2013). The omissions alleged here, relating to the legal status of Plaintiff's debt, are material.

9

> as to the legal status of a debt in connection with the sale, transfer or assignment of a debt to another debt collector, with the knowledge that the purchaser, transferee or assignee intends to initiate or continue attempts to collect the debt.

*Magrin v. Unifund CCR Partners, Inc.*, 52 F. App'x 938, 939 (9th Cir. 2002) (summary order) (reversing dismissal by district court). Likewise, other courts have recognized that communications with a third party are actionable under the statute. *See Wilhelm*, 519 F.3d at 418 (communications from debt collector to credit reporting agency could be covered if not time-barred); *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 386 (7th Cir. 2010) (letter sent by loan servicer to mortgagor, letter from firm that partnered with loan servicer to mortgagor, and letter from loan servicer to the same firm each constitutes "a communication in connection with the collection of [a] debt"); *Fritz v. Resurgent Capital Servs., LP*, 955 F. Supp. 2d 163, 170 (E.D.N.Y. 2013) (non-exempted litigation activities are included under Section 1692e prohibition on false representations); *Barrows v. Petrie & Stocking, SC*, 08 Civ. 65, 2008 WL 3540405, at *8 (W.D. Wis. Aug. 13, 2008) ("[P]ostjudgment communications are not exempt from the [FDCPA's] coverage simply because the debt collector's communication is directed to a third party and not to the consumer himself."); *Sullivan v. Equifax, Inc.*, Civ. A. 01-4336, 2002 WL 799856, at *4 (E.D. Pa. Apr. 19, 2002) ("Because reporting a debt to a credit reporting agency can be seen as a communication in connection with the collection of a debt, the reporting of such a debt in violation of the provisions of § 1692e(8) can subject a debt collector to liability under the FDCPA.").

Although the Second Circuit has not directly addressed whether such communications are covered under the statute, it has stated that the courts lack the power "to disregard the plain language of the FDCPA unless the result is absurd or directly contravenes the purpose of the

statute." *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 118 (2d Cir. 1998).[3] Here, rather than "thwart the obvious purpose of the statute," *id.* (citations and internal quotation marks omitted), the Court reads "communication" to include representations made by one debt collector to a subsequent purchaser or assignee. This reading effectuates the FDCPA's purpose by ensuring that debt collectors may not benefit from unlawful collection practices merely by enlisting third-party debt collectors to act on their behalf. To read the statute otherwise would allow debt collectors to escape liability through the simple act of transferring a debt and would enable subsequent debt purchasers or assignees to circumvent the statute by remaining purposely ignorant of a loan's legal status. *Cf. Powers v. Prof'l Credit Servs., Inc.*, 107 F. Supp. 2d 166, 168 (N.D.N.Y. 2000) ("[T]o allow a creditor to hire a debt collector after receiving actual knowledge that the consumer has retained legal representation for that debt and then withhold knowledge of this representation from the debt collector would blatantly circumvent the intent of the FDCPA."); *see also Johnson v. Riddle,* 305 F.3d 1107, 1117 (10th Cir. 2002) ("Because the FDCPA . . . is a remedial statute, it should be construed liberally in favor of the consumer."); *Harrison v. NBD Inc.*, 968 F. Supp. 837, 844 (E.D.N.Y. 1997) (same). Moreover, to the extent that Plaintiff can establish that Velocity caused Capital Management to send a collection letter on its behalf, such involvement may constitute "affirmative conduct with regard to collecting a debt." *See, e.g., Ruth v. Triumph P'ships*, 577 F.3d 790, 797 (7th Cir. 2009). In sum, Plaintiff

---

[3] The Court is aware that in *Kropelnicki*, the Second Circuit held that a letter addressed to the plaintiff's daughter (1) did not violate the prohibition on communications with a party represented by an attorney "because the letter was only addressed to [the daughter], and was therefore not a communication with [the plaintiff] at all," and (2) did not provide the plaintiff with standing to pursue a cause of action under the FDCPA's prohibition on false, misleading, or deceptive representations because it "was not threatening or misleading as to [the plaintiff] because it was not addressed to her." 290 F.3d at 130. Insofar as Plaintiff argues that Velocity's communication with Capital Management constitutes a prohibited communication with a party represented by counsel prohibited by Section 1692c(a)(2), Plaintiff has not stated a plausible ground for relief. As to the remaining misrepresentations, however, the circumstances here, in which Velocity's communications were made in connection with the collection of Plaintiff's debt, are unlike those in *Kropelnicki*, where the collection activities were in connection with the debt of another individual and, at most, incidentally related to the plaintiff's rights.

has asserted a plausible claim that Velocity's placement of Plaintiff's debt with Capital Management was a "communication" made "in connection with the collection of [a] debt" and that Velocity made actionable omissions by failing to disclose that Plaintiff disputed his debt and was represented by counsel.

2. Improper Communications with Plaintiff

Plaintiff has also alleged facts which may establish that Velocity is vicariously liable for violations of Sections 1692c(a)(2), 1692e(2)(A), 1692e(8), and 1692e(10) in connection with the October 24, 2012 letter that Capital Management sent to Plaintiff on Velocity's behalf. The Court has serious doubts regarding Plaintiff's contention that this letter constitutes a direct communication by Velocity. Rather, given that Plaintiff's allegations implicate the debt collection activities of Capital Management, a third-party debt collector, they are more appropriately assessed under principles of vicarious liability. *See Pollice*, 225 F.3d at 405 ("Despite the . . . plaintiffs' conclusory statement that they do not rely on vicarious liability, in effect their argument that CAH is directly liable seems to us in fact to implicate vicarious liability principles because they contend that CAH's involvement in the debt collection is through the other defendants."). The Second Circuit has not squarely addressed how vicarious liability is to be evaluated in the context of a debt collector that employs another to carry out unlawful collection activities on its behalf, and district courts in the circuit are divided between two different approaches.

The first approach, which the Court adopts here, follows the Third Circuit's reasoning in *Pollice*, which held that an entity that "itself meets the definition of 'debt collector' may be held vicariously liable for unlawful collection activities carried out by another on its behalf." 225 F.3d at 404; *accord Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 515-16 (S.D.N.Y.

12

2013); *Fritz*, 955 F. Supp. 2d at 177; *Eun Joo Lee v. Forster & Garbus LLP*, 926 F. Supp. 2d 482, 488 (E.D.N.Y. 2013). Under traditional agency principles, vicarious liability does not require specific acts of control, but rather allows for principals to be held liable for the acts of their agents when the agents are acting "'in the scope of their authority.'" *Okyere*, 961 F. Supp. 2d at 516-17 (quoting *Meyer v. Holley*, 537 U.S. 280, 285 (2003)); *see also Newman v. Checkrite Cal., Inc.*, 912 F. Supp. 1354, 1370-71 (E.D. Cal. 1995) (imposing vicarious liability on principal debt collection agency under theory of apparent authority where agents' conduct violated the FDCPA). As recognized in this line of cases, it is a reasonable inference that one debt collector undertaking debt collection activities on behalf of another is acting within the scope of its authority. *See, e.g., Fritz*, 955 F. Supp. 2d at 177; *Okyere*, 961 F. Supp. 2d at 517. A debt collector may not avoid FDCPA liability simply by hiring another to engage in unlawful debt collection activities on its behalf. *Fritz*, 955 F. Supp. 2d at 177; *see also Pollice*, 225 F.3d at 404-05 ("Thus, we conclude that NTF—which itself meets the definition of 'debt collector'— may be held vicariously liable for CARC's collection activity. We believe this is a fair result because an entity that is itself a 'debt collector'—and hence subject to the FDCPA—should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf."). Plaintiff has plausibly alleged that Velocity, a debt collector under the FDCPA, enlisted Capital Management to engage in unlawful debt collection activities on its behalf in an attempt to shield itself from liability. Applying the rule from *Pollice*, this is sufficient to establish the requisite agency relationship.[4] Plaintiff, therefore, has adequately alleged facts such that Velocity may be

---

[4] Although, as Velocity points out, several of the cases to apply this reasoning have arisen in the context of an attorney-client relationship, Def. Reply 5 (citing *Okyere*, 961 F. Supp. 2d at 517; *Edwards v. Velocity Invs., LLC*, 10 Civ. 1798, 2011 WL 4007394, at *8 (N.D. Ohio Sept. 8, 2011)), an attorney-client relationship is not required for vicarious liability, *see, e.g., Pollice*, 225 F.3d at 405 (assignee partnership may be held vicariously liable); *Fritz*, 955 F. Supp. 2d at 177 (debt purchasing company may be held vicariously liable). In *Edwards*, Velocity faced vicarious liability under circumstances analogous to those alleged here. 2011 WL 4007394, at *8. Although the case involved a law firm that collected debts on Velocity's behalf, the attorney-client relationship was not discussed as a

held vicariously liable for FDCPA violations arising out of Capital Management's October 24, 2012 letter to Plaintiff.

Moreover, even if the Court were to apply the second approach to vicarious liability employed in this circuit, Plaintiff's claims would be sufficient to survive a motion to dismiss. Several courts have held that in order to be vicariously liable "the 'principal' must exercise control over the conduct or activities of the 'agent.'" *Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 259 (S.D.N.Y. 2011) (citation and internal quotation marks omitted); *accord LaCourte v. JP Morgan Chase & Co.*, 12 Civ. 9453, 2013 WL 4830935, at *5 (S.D.N.Y. Sept. 4, 2013); *Herzlinger v. Nichter*, 09 Civ. 0192, 2011 WL 1434609, at *9 (S.D.N.Y. Feb. 9, 2011). Plaintiff alleges that Velocity "exercised control or had the right to exercise control over the collection activities of Capital Management." Am. Compl. ¶¶ 29-33. Plaintiff further alleges that Velocity, in placing Plaintiff's debt with Capital Management and communicating (or alternatively, failing to communicate) certain details relating to Plaintiff's debt, caused Capital Management to send the October 24, 2012 letter to Plaintiff in violation of the FDCPA. *Id.* ¶¶ 89-101. Where, as here, control has been plausibly asserted in the complaint, the issue is more appropriately addressed at a later stage of the litigation. *See Kinel v. Sherman Acquisition II LP*, 05 Civ. 3456, 2006 WL 5157678, at *7 (S.D.N.Y. Feb. 28, 2006) ("Before any discovery has occurred, the Court is unable to judge the full extent of the control exercised by the [defendants] over the collection agencies and attorneys hired to collect the [d]ebt."), *report and recommendation adopted*, 2007 WL 2049566 (S.D.N.Y. July 13, 2007). Unlike in *LaCourte*, where the court explained, in dicta, that the plaintiff "simply has not plausibly alleged 'a manifestation by the principal that the agent shall act for him,' 'accept[ance of] the undertaking'

---

basis for the court's decision. *Id.* Rather, applying the rule set forth in *Pollice*, the vicarious liability determination turned solely on whether Velocity was itself a debt collector whose agent had engaged in collection activities on its behalf. *Id.* Neither *Okyere* nor *Edwards* suggests that other agency relationships may not form the basis of liability.

14

by the agent, or 'an understanding between the parties that the principal is to be in control of the undertaking,'" 2013 WL 4830935, at *5 (quoting *Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1546 (S.D.N.Y. 1991)), the complaint here is not so deficient. Accordingly, even under this more restrictive standard for vicarious liability, Plaintiff's allegations are sufficient to state a claim against Velocity for any FDCPA violations arising out of Capital Management's October 24, 2012 letter.

## CONCLUSION

For the reasons stated above, Velocity's motion is DENIED.

The Clerk of Court is directed to terminate the motion at ECF No. 42.

SO ORDERED.

Dated: December 8, 2014
New York, New York

_____
ANALISA TORRES
United States District Judge